**Steven J. HERMELING, Plaintiff,**

v.

**MINNESOTA FIRE & CASUALTY COMPANY, f/k/a Minnesota Mutual Fire & Casualty Company, defendant and third-party plaintiff, Appellant,**

v.

**Roschelle Johnson LESSARD, et al., Respondents.**

No. C4–95–376.

Court of Appeals of Minnesota.

July 25, 1995.

Review Granted Sept. 20, 1995.

Richard J. Sheehan, Harvey, Sheehan & Benson, Minneapolis, for plaintiff.

Daniel J. Trudeau, King & Hatch, P.A., St. Paul, for appellant.

George C. Hottinger, Erstad & Riemer, P.A., Minneapolis, for respondents.

Considered and decided by KLAPHAKE, P.J., and HUSPENI and NORTON, JJ.

**OPINION**

HUSPENI, Judge.

Five years and eleven months after an accident involving the collision of two vehicles, the victim brought an underinsured motorist's claim against appellant, the insurer of the vehicle in which the victim was injured. A month later, appellant filed a third-party subrogation action against respondents, the

owner and the operator of the other vehicle. Respondents moved successfully for summary judgment, arguing that during that month, the six-year statute of limitations for bringing actions on the accident expired. Appellant challenges the summary judgment. Because we conclude that appellant as subrogee can stand in no better position than the subrogor victim, whose right to bring suit was governed by a six-year statute of limitations, we affirm.

## FACTS

On March 22, 1988, a vehicle owned by respondent Warren E. Johnson, operated by respondent Rochelle Johnson Lessard, and insured by American States, collided with another vehicle, owned and operated by Randy Nelson and insured by appellant Minnesota Fire & Casualty Company (MFC). Steven Hermeling, a passenger in Nelson's vehicle, was injured. American States offered Hermeling the liability limit of the policy, $30,000, in settlement in June 1989. In July 1989, MFC preserved its subrogation rights against Johnson and Lessard by tendering its own check in the amount of $30,000 to Hermeling, who then returned the check from American States.

Hermeling sued MFC for coverage under Nelson's underinsured motorist (UIM) policy on February 28, 1994. On March 31, 1994, MFC answered Hermeling's complaint and filed a third-party complaint alleging negligence against Johnson and Lessard. Johnson and Lessard moved for summary judgment, arguing that the time to bring a negligence action arising out of the accident had expired on March 22, 1994. The district court granted the summary judgment motion, and MFC appeals.

## ISSUE

Does the statute of limitations on a subrogation action brought by a UIM insurer against an underinsured tortfeasor begin to run on the date of the accident?

1. While appellant's complaint alleges entitlement to "subrogation and/or indemnity," appellant has abandoned any reference to indemnity in the trial court or in this court. We, therefore, need

## ANALYSIS

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). Here, the facts are not in dispute, but the legal issue is of first impression in Minnesota.

Minn.Stat. § 541.05, subd. 1(5) (1992) provides that actions "for any other injury to the person or rights of another, not arising on contract, and not hereinafter enumerated" must be commenced within six years. The accident occurred on March 22, 1988; the right to commence an action for an injury arising out of it therefore expired on March 22, 1994.

Appellant argues that the statute of limitations for its subrogation action should run from the time of the substitution of its own check to Hermeling in July 1989, because it was only at that time that a subrogation right arose. Despite the superficial appeal of this argument, it must fail.

We note, initially, that appellant's claims are rooted only in subrogation.[1] While appellant's argument that a subrogee's statute of limitations should commence at a point in time other than that of the subrogor is new to the appellate courts of this state, similar arguments have been addressed by both commentators and the supreme court of at least one jurisdiction. Both sources are informative:

> While a subrogated insurer frequently contends that its action against the third-party tortfeasor who allegedly caused the damage or injury for which the insurer had to recompense its insured did not accrue, and the statute of limitations did not begin to run thereon, until the insurer had made the payments required under its insurance contract, courts have held, generally, that such a contention is without merit * * * [T]he statute of limitations begins to run on such actions at the same time that the

not address further the inapplicability of the doctrine of indemnity, but will resolve the issue solely in terms of subrogation.

statute of limitations would have begun to run on the insured's action, or that of the insured's personal representative, against the third-party tortfeasor.

Jane Massey Draper, B.C.L., Annotation, *When Does Statute of Limitations Begin to Run Upon an Action by Subrogated Insurer Against Third–Party Tortfeasor,* 91 A.L.R.3d 844, 850 § 3.

The supreme court of Montana in a recent decision also concluded that the statute of limitations on the insurer's action must begin to run at the same time that the statute of limitations begins to run on the insured's action. In *St. Paul Fire & Marine Ins. v. Glassing,* 269 Mont. 76, 887 P.2d 218 (1994), the Montana Supreme Court stated:

> Because an insurer's claim is derived from that of the insured, its claim is subject to the same defenses, including the statute of limitations as though the action were sued upon the insured. * * *
>
> [W]e are cited to no authority for the proposition that the principles of subrogation vary with the type of risk insured against. We recognize that there are jurisdictions which have statutes extending the limitations period for subrogation claims of insurers that have paid damages to their insureds under uninsured or underinsured motorist policy provisions from the date of payment made under the policy. However, Montana has no such statutory authority extending the limitation date. Whether there should be such a statute is a matter to be determined by the legislature.
>
> Rather, this Court follows the general principles of subrogation which provide:
>
>> Since the insurer's claim by subrogation is derivative from that of the insured, it is subject to the same statute of limitations as though the cause of action were [sued] upon by the insured. Consequently, the insurer's action is barred if it sues after expiration of the period allowed for the suing out of tort claims. 16 Couch on Insurance 2d, § 61:234 (1983).

*Id.* 887 P.2d at 221 (citations omitted).

We find the rationale of the Montana Supreme Court persuasive. Like the Montana legislature, the Minnesota legislature has not addressed the issue of whether a different statute of limitations should apply to insurer and insured in a subrogation action. We share the view of the Montana court that the question of whether there should be such a statute must be answered by the legislature. *See, e.g., Johnson v. Winthrop Lab.,* 291 Minn. 145, 151, 190 N.W.2d 77, 81 (1971) (statutes of limitations are within the legislative domain and courts have no authority to extend or modify the limits prescribed by statute).

Because UIM coverage is not mandatory in Montana as it is in Minnesota, MFC argues that having an insurer's cause of action accrue on the date of the accident is equitable in Montana, where insurers can avoid the restriction by issuing policies without UIM coverage, but not in Minnesota, where policies must include UIM coverage. While we acknowledge the additional limitation placed on Minnesota insurers, we do not regard it as inherently inequitable when balanced against the alternative of the possible 12–year limitation which could result from permitting UIM insurers to bring actions six years after settlement with the underinsured tortfeasor.

We conclude that absent legislative action, we must adhere to the overriding principles of the doctrine of subrogation and recognize that:

> [T]he insurer, as the subrogee, is entitled to no greater rights than those which the insured-subrogor possesses at the time the subrogee asserts the claim, as the subrogee merely "steps into the shoes" of the subrogor.

*Great N. Oil Co. v. St. Paul Fire & Marine Ins. Co.,* 291 Minn. 97, 99, 189 N.W.2d 404, 406 (Minn.1971). MFC "stepped into the shoes" of Hermeling, who was not entitled to bring an action on March 31, 1994.

Instead, Hermeling timely brought his action against MFC on February 28, 1994, three weeks before his right to do so expired. MFC's right to bring an action against Johnson and Lessard was solely a right of subrogation on Hermeling's claim. Because Hermeling had no right to bring an action after March 22, 1994, MFC as his subrogee also

had no right to bring an action after that date.

MFC also argues that *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983) requires this court to hold that an insurer's cause of action does not accrue until the day it substitutes its check. We disagree. *Schmidt* established the rule whereby an underinsurer protects its subrogation rights by substituting its own payment to the insured in the amount of the tentative settlement between the insured and the tortfeasor. *Id.* at 263. *Schmidt* does not address the issue of when a cause of action accrues, but extends the period available to UIM insurers for deciding whether to acquiesce in the settlement or preserve their subrogation rights by substituting their own check for the settlement offer.

> The district courts gave the underinsurer 10 days [from receiving notice of settlement] in which to make this assessment in cases where the underinsurer had failed to pay underinsurance benefits by the time a tentative settlement had been reached. We conclude that in the future 30 days from the written notice of the tentative settlement agreement is a more reasonable time period, and so the procedure set out in the district court orders should hereafter be modified.

*Id.* at 263. *Schmidt* does not extend the period for bringing a subrogation action beyond the statutory six years.

MFC argues that if a UIM insurer were to receive notice of settlement six years to the day from the date of the accident, its right to subrogation would be effectively nullified, and if it received notice less than 30 days prior to the expiration of the six-year period, the 30-day period mandated in *Schmidt* would be effectively nullified.[2] *Schmidt*, however, demonstrates the courts' ability to fashion an appropriate remedy, given that "[s]ubrogation rights depend on general principles of equity and the nature of the contract of insurance." *Id.* at 262 (quotation and citation omitted). If either of the situations envisioned by MFC arises, the courts, like the court in *Schmidt*, will be able to fashion an equitable resolution. It would be inappropriate for this court at this time to render an advisory opinion as to what future equitable resolutions might be available.

## DECISION

Appellant was not precluded from bringing its subrogation action well within six years of the accident when the statute of limitations began to run. We see no error in the district court's application of the law.

**Affirmed.**

---

2. As the trial court pointed out, neither of these situations occurred here. MFC had five years after notice of American States' settlement with Hermeling to bring its action; it also had 22 days after Hermeling brought his action before the statutory period expired. Instead, MFC waited 31 days to either answer Hermeling's suit or bring its third-party action against Johnson and Lessard, despite the Minn.R.Civ.P. 12.01 requirement that "[d]efendant shall serve an answer within 20 days after service of the summons upon that defendant."